# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| **GREAT WEST CASUALTY COMPANY,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Cause No. 1:13-cv-198-WTL-MJD |
| | ) |
| **LAKEVILLE MOTOR EXPRESS, INC.,** et al., | ) |
| | ) |
| Defendants. | ) |

## ENTRY ON CROSS MOTIONS FOR SUMMARY JUDGMENT

This cause is before the Court on the various motions for summary judgment filed by the parties. The motions are fully briefed, and the Court, being duly advised, rules as follows:

- The motion of Defendant Pamela K. Robbins, as Administratrix of the Estate of Mike Douglas Robbins, Deceased (dkt. no. 148) is **DENIED**;

- The motion of Defendant Continental Western Insurance Company ("Continental") (dkt. no. 147) is **DENIED**;[1]

- The motion of Plaintiff Great West Casualty Company ("Great West") (dkt. no. 152) is **GRANTED**; and

- The motion of Defendant Wren Equipment, LLC ("Wren") (dkt. no. 158) is **GRANTED**.[2]

The Court's reasoning is set forth below.

---

[1] In making its motion for summary judgment and responding to the various other motions for summary judgment, Continental fully incorporates Mrs. Robbins' motion for summary judgment and related filings.

[2] In making its motion for summary judgment and responding to the various other motions for summary judgment, Wren fully incorporates Great West's motion for summary judgment and related filings.

## I. STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the Court accepts as true the admissible evidence presented by the non-moving party and draws all reasonable inferences in the non-movant's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Id.* Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

## II. BACKGROUND

On January 4, 2011, in Richmond, Indiana, Mike Douglas Robbins was fatally injured when the vehicle he was driving was struck by a tractor-trailer driven by Linda K. Phillips. At the time of the accident, Phillips was driving the tractor-trailer in the course and scope of her employment with Hoker Trucking, LLC ("Hoker"). The Peterbuilt tractor involved in the accident was owned by Hoker, and the Wabash National trailer being pulled by the tractor was owned by Wren. As of July 1, 2001, however, Wren, an equipment leasing company, had leased the trailer to Lakeville Motor Express, Inc. ("Lakeville"). Lakeville, in turn, leased the trailer to Hoker on August 21, 2006, pursuant to a Trailer Interchange Agreement.

Prior to that, Great West issued a Commercial Lines Insurance Policy to Lakeville (the "Policy"). The Policy provided commercial automobile liability coverage to Lakeville between September 1, 2010, and September 1, 2011.[3]

After the accident, Pamela K. Robbins, as administratrix of Mr. Robbins' estate, filed a negligence suit against Hoker, Phillips, and Lakeville in state court. Lakeville was subsequently dismissed from the lawsuit. This declaratory judgment suit brought by Lakeville's insurer, Great West, followed.

Interestingly, this case is not about Lakeville's coverage under the Policy. Rather, Great West is seeking a declaration from the Court that:

- Hoker and Phillips are not "insureds" under the Great West Policy; therefore, the Great West Policy does not provide any coverage to Hoker or Phillips for the Accident.

- Great West is not liable to defend or indemnify Hoker or Phillips for any judgment that may be entered against either of them in the underlying lawsuit.

- Great West is entitled to recover the costs of [its] declaratory judgment action and all other appropriate relief.

Great West's Br. at 2, Dkt. No. 153. Mrs. Robbins disagrees and strongly insists that Hoker and Phillips are "insureds" under Lakeville's Policy with Great West. Thus, according to Mrs. Robbins, Great West is required to defend and/or indemnify Hoker and Phillips in relation to the underlying state court action.[4]

The Policy defines an insured as follows:

---

[3] Wren was identified as an additional insured under the Great West Policy.

[4] Hoker's insurer, Northland Insurance Co. is currently providing a defense to Phillips and Hoker in the underlying state court action. Northland also provided a defense to Lakeville prior to its dismissal from the suit. It is also noteworthy that the per occurrence limit under Northland's policy is $1,000,000, whereas the per occurrence limit under Great West's Policy is $5,000,000.

3

A.  **COVERAGE**

. . .

1.  **WHO IS AN INSURED**

    The following are "insureds":

    a.  You for any covered "auto."[5]

    b.  Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

        (1)  The owner or anyone else from whom you hire or borrow a covered "private passenger type" "auto."

        (2)  Your "employee" or agent if the covered "auto" is a "private passenger type" "auto" and is owned by that "employee" or agent or a member of his or her household.

        (3)  Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

        (4)  Anyone other than your "employees," partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees," while moving property to or from a covered "auto."

        (5)  A partner (if you are a partnership), or a member (if you are a limited liability company), for a covered "private passenger type" "auto" owned by him or her or a member of his or her household.

        (6)  Anyone described in paragraphs c., d. or e. below.

Dkt. No. 109-6 at 33. An endorsement in the Policy further modified this provision as follows:

The following is added to Section II – Liability Coverage – Paragraph A.1.b. – Who Is An Insured:

1.  Anyone who has leased, hired, rented, or borrowed an "auto" from you that is used in a business other than yours.

---

[5] It is undisputed that a trailer is an "auto" under the Policy.

> 2. Anyone that is using an "auto" of yours under a written Trailer Interchange Agreement.

*Id.* at 21 (emphasis added). Great West denies coverage to Phillips and Hoker pursuant to this endorsement.[6]

### III. DISCUSSION

Mrs. Robbins argues that the Great West Policy provides coverage to Hoker and Phillips because: (1) The Policy is *literally* ambiguous and must be construed in favor of coverage; (2) any alleged limitations in the "Who Is An Insured" endorsement are not enforceable because the policy is *structurally* ambiguous; (3) assuming the policy and endorsement are not ambiguous, the specific facts of this case require coverage under the Policy; and/or (4) regardless of the Policy, Great West is statutorily required to provide liability coverage to Hoker and Phillips. Each of Mrs. Robbins' arguments is discussed below.

#### A. Literal Ambiguity

First, Mrs. Robbins argues that, taken together, the Policy and the endorsement are literally ambiguous. Specifically, Mrs. Robbins argues that, because subsection A.1.b. already has subparagraphs (1) and (2), it is unclear exactly where subparagraphs 1. and 2. from the endorsement should be added. Although Great West concedes that, for purposes of clarity, it should have numbered the subparagraphs (7) and (8), it is clear that the subparagraphs should be added to the end of subsection A.1.b. and further limit who is an insured under the Policy. The Court agrees.

---

[6] Great West objects to and moves to strike the "Facts" section in Mrs. Robbins' brief (dkt. no. 155 at 8). The Court need not and does not resolve Great West's objection and motion, as the Court is capable of determining supported factual evidence from argument and rhetoric, and, even considering Mrs. Robbins' designated facts, Great West is entitled to summary judgment as a matter of law.

5

Under Minnesota law,[7] "[i]nsurance coverage issues and the interpretation of insurance contract language are questions of law." *Jenoff, Inc. v. New Hampshire Ins. Co.*, 558 N.W.2d 260, 262 (Minn. 1997).

> When insurance policy language is clear and unambiguous, "the language used must be given its usual and accepted meaning." *Lobeck v. State Farm Mut. Auto. Ins. Co.*, 582 N.W.2d 246, 249 (Minn. 1998) (citing *Bobich v. Oja*, 258 Minn. 287, 294, 104 N.W.2d 19, 24 (1960)). If policy language is ambiguous, it must be interpreted in favor of coverage. *Nordby v. Atlantic Mut. Ins. Co.*, 329 N.W.2d 820, 822 (Minn. 1983).

*Wanzek Const., Inc. v. Employers Ins. of Wausau*, 679 N.W.2d 322, 324-25 (Minn. 2004).

> In deciding whether an ambiguity truly exists, . . . a policy must be read as a whole. The language must be considered within its context, and with common sense. If a phrase is subject to two interpretations, one reasonable and the other unreasonable in the context of the policy, the reasonable construction will control and no ambiguity exists.

*Mutual Serv. Cas. Ins. Co. v. Wilson Twp.*, 603 N.W.2d 151, 153 (Minn. Ct. App. 1999).

As noted above, Great West argues that the proper and most reasonable interpretation of the policy and the endorsement is effectively as follows:

**1. WHO IS AN INSURED**

The following are "insureds":

a. You for any covered "auto."

b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

(1) The owner or anyone else from whom you hire or borrow a covered "private passenger type" "auto."

(2) Your "employee" or agent if the covered "auto" is a "private passenger type" "auto" and is owned by that "employee" or agent or a member of his or her household.

---

[7] The parties agree that Minnesota law applies to this case. Accordingly, the Court has not undertaken an independent choice of law analysis.

(3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

(4) Anyone other than your "employees," partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees," while moving property to or from a covered "auto."

(5) A partner (if you are a partnership), or a member (if you are a limited liability company), for a covered "private passenger type" "auto" owned by him or her or a member of his or her household.

(6) Anyone described in paragraphs c., d. or e. below.

(7) Anyone who has leased, hired, rented, or borrowed an "auto" from you that is used in a business other than yours.

(8) Anyone that is using an "auto" of yours under a written Trailer Interchange Agreement.

Mrs. Robbins argues that this interpretation is not reasonable. She does not, however, provide any support or explanation as to why this interpretation is unreasonable. Rather, Mrs. Robbins argues that the "more logical interpretation of the endorsement" is as follows:

1. **WHO IS AN INSURED**

   The following are "insureds":

   a. You for any covered "auto."

   b. 1. Anyone who has leased, hired, rented, or borrowed an "auto" from you that is used in a business other than yours.

   2. Anyone that is using an "auto" of yours under a written Trailer Interchange Agreement.

   Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

   (1) The owner or anyone else from whom you hire or borrow a covered "private passenger type" "auto."

(2) Your "employee" or agent if the covered "auto" is a "private passenger type" "auto" and is owned by that "employee" or agent or a member of his or her household.

(3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

(4) Anyone other than your "employees," partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees," while moving property to or from a covered "auto."

(5) A partner (if you are a partnership), or a member (if you are a limited liability company), for a covered "private passenger type" "auto" owned by him or her or a member of his or her household.

(6) Anyone described in paragraphs c., d. or e. below.

Robbins' Br. at 12. Under the foregoing approach, the endorsement actually grants coverage to Hoker and Phillips. This interpretation, however, is hardly logical. It is clear that the clauses in the endorsement are meant to limit coverage and not grant coverage to those remote third parties contemplated by the clauses. Thus, as Great West argues, the subparagraphs should be added to the end of subsection A.1.b. Great West's interpretation is reasonable and Mrs. Robbins' interpretation is not. Accordingly, the policy is not literally ambiguous.

### B. Structural Ambiguity

Next, Mrs. Robbins argues that the Policy is structurally ambiguous because "a reasonable person would not realize [the endorsement's] existence and application." *Id.* at 13. Thus, she argues that the endorsement should be disregarded. To the extent the Minnesota Supreme Court would adopt such a principle, the Court does not agree that it would be used to invalidate the endorsement in this case.

8

Mrs. Robbins relies mostly on an Indiana case, *Nat'l Mut. Ins. Co. v. Curtis*, 867 N.E.2d 631 (Ind. Ct. App. 2007) (finding that trampoline exclusion in homeowner's policy was not enforceable because it was "obscured"), to support her argument. In *Curtis*, the court concluded that "if an insurance carrier desires to exclude coverage, this should be spelled out for the policyholder in clear and unmistakable language with conspicuous and plain positioning." *Id.* at 637. Otherwise, the exclusion will be deemed ambiguous. Mrs. Robbins also cites to two Wisconsin cases: *Folkman v. Quamme*, 665 N.E.2d 857 (Wis. 2003), where a "contextual ambiguity" voided a provision in an insurance policy, and *Dowhower v. Marquez*, 674 N.W.2d 906 (Wis. Ct. App. 2003), where a policy was deemed too "organizationally complex" for an insured to navigate.

First and foremost, Minnesota courts have not recognized any similar doctrine. Nonetheless, even assuming Minnesota courts did recognize such a doctrine, it would not be used to invalidate the endorsement in this case. Mrs. Robbins argues that the endorsement at issue "can only be uncovered after mining through the Policy." Robbins' Br. at 15. In fact, it took Great West's own employees "more than five minutes" to locate the endorsement. *Id.* These arguments, however, are not persuasive. Unfortunately, these facts would likely be true of most commercial insurance policies. The Court will not invalidate an endorsement simply because it is located deep within a several hundred page policy—that would have the effect of making only the first few pages of a policy enforceable. More importantly, no one, other than Mrs. Robbins (and Continental), question the endorsement's existence and application. In this regard, all of the parties to the Policy believe that Hoker and Phillips are not "insureds" under the Policy. The endorsement clearly states in bold language: "**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY. CHANGES – WHO IS AN INSURED**." Dkt.

No. 109-6 at 21. The endorsement's form number is also listed on the declarations page. Based on the foregoing, the Court will not invalidate the endorsement on the basis of structural ambiguity.

### C. Facts/Policy Interpretation

Mrs. Robbins further argues that, even if the endorsement is valid, Great West cannot "demonstrate that the Trailer was being used in a business other than Lakeville/Wren's and/or that the alleged exception for a trailer being used pursuant to a written trailer interchange agreement applies." Robbins' Br. at 17. The Court does not agree.

"Anyone who has leased, hired, rented, or borrowed an 'auto' from [Lakeville] that is used in a business other than [Lakeville's]" is not an insured under the Policy. Dkt. No. 109-6 at 21. It is undisputed that, at the time of the accident, Phillips was driving the tractor-trailer in the course and scope of her employment with Hoker, and was hauling a load under Hoker's direction and in furtherance of Hoker's business. Hoker had also been the lessee of the trailer for almost five years prior to the accident. Mrs. Robbins appears to argue that the trailer was also "simultaneously" being used in Lakeville's business at the time of the accident, because Lakeville, a motor carrier like Hoker, had a leasehold interest in the trailer. While the Court does not find much merit in this argument, the Court need not address whether Lakeville's leasehold interest created a "simultaneous" business interest, because the second clause in the endorsement is easily satisfied.

Indeed, "[a]nyone that is using an 'auto' of [Lakeville's] under a written Trailer Interchange Agreement" is also not an insured under the Policy. *Id.* Hoker leased the trailer from

Lakeville pursuant to a Trailer Interchange Agreement dated August 21, 2006.[8] Although the Trailer Interchange Agreement did not specify the exact trailers covered by the lease, it stated that it applied to trailers "owned by" Lakeville or "under long term lease to" Lakeville. Mrs. Robbins argues that the trailer in question was not "under long term lease to" Lakeville. Rather, at the time of the accident, the lease was month-to-month. While this is true, the trailer was leased by Wren to Lakeville from 2001 to 2013. Despite the month-to-month nature of the lease at the time of the accident, this twelve-year span (and the approximate ten-year span at the time of the accident) satisfies the "long term lease" requirement of the Trailer Interchange Agreement. Additionally, Mrs. Robbins' argument that the trailer was not a part of the Trailer Interchange Agreement because Wren did not lease it to Lakeville until 2009 (thus, it was not covered by the 2006 Trailer Interchange Agreement) is unavailing. Although a new lease was executed on December 18, 2009, Lakeville clearly leased the trailer (VIN # 1JJV532W6XL546134) from Wren beginning on July 1, 2001.

Mrs. Robbins' final argument that the lease agreement was a "complete sham that should be disregarded" is also futile (and, in the Court's perspective, hard to understand). She argues that "[t]he [2009] Lease was executed by the same person for both Wren and Lakeville, and provided no benefit to Wren. Lakeville merely agreed to purchase insurance for the Trailers. Wren could have accomplished the same benefit by simply parking all of its trailers." Robbins' Br. at 20. Mrs. Robbins, however, provides no legal support for these arguments, and, as Great West notes, Wren's and Lakeville's similarity in owners "does not defeat the independence of

---

[8] The Trailer Interchange Agreement was "in effect from the moment" Hoker took possession of the trailer in question and terminated "at such time as the trailer [was] returned" to Lakeville. Dkt. No. 109-12.

11

those two separate companies nor does it invalidate the lease." Great Wests' Resp. at 16. Thus, the argument is ineffective.

### D. Statutory Arguments

Lastly, Mrs. Robbins argues that Great West is statutorily required to provide coverage to Hoker and Phillips. Both Lakeville and Wren are Minnesota companies. However, under an endorsement in the Great West Policy, Great West was required to comply with the financial responsibility laws of several states, including Wisconsin. Thus, according to Mrs. Robbins, Wisconsin Statute §§ 194.41 and 632.32 are applicable and require Great West to provide coverage to Hoker and Phillips. Robbins' Br. at 21. Great West insists that the Wisconsin Statutes are not applicable. The Court agrees with Great West.

Wisconsin Statute § 194.41(1) provides as follows:

> No permit or vehicle registration may be issued to a common motor carrier of property, contract motor carrier, or rental company, no permit or vehicle registration may remain in force to operate any motor vehicle under the authority of this chapter, and no vehicle registration may be issued or remain in force for a semitrailer unless the carrier or rental company has on file with the department and in effect an approved certificate for a policy of insurance or other written contract in such form and containing such terms and conditions as may be approved by the department issued by an insurer authorized to do a surety or automobile liability business in this state under which the insurer assumes the liability prescribed by this section with respect to the operation of such motor vehicles. The certificate or other contract is subject to the approval of the department and shall provide that the insurer shall be directly liable for and shall pay all damages for injuries to or for the death of persons or for injuries to or destruction of property that may be recovered against the owner or operator of any such motor vehicles by reason of the negligent operation thereof in such amount as the department may require. Liability may be restricted so as to be inapplicable to damage claims on account of injury to or destruction of property transported, but the department may require, and with respect to a carrier transporting a building, as defined in s. 348.27 (12m) (a) 1., shall require, a certificate or other contract protecting the owner of the property transported by carriers from loss or damage in the amount and under the conditions as the department may require. No permit or vehicle registration may be issued to a common motor carrier of passengers by any motor vehicle, or other carrier of passengers by motor bus, except those registered in accordance with s. 341.26 (2) (a) and (d), and no permit or vehicle registration may remain in force to operate any

12

> motor vehicle unless it has on file with the department a like certificate or other contract in the form and containing the terms and conditions as may be approved by the department for the payment of damages for injuries to property and injuries to or for the death of persons, including passengers, in the amounts as the department may require. *This subsection does not apply to a motor carrier that is registered by another state under the unified carrier registration [UCR] system consistent with the standards under 49 USC 13908 and 14504a.*

(emphasis added). Great West argues that this statute does not apply because (1) the accident happened in Indiana, not Wisconsin, and Lakeville and Wren are Minnesota companies, (2) Lakeville was registered under the UCR with its base state being Minnesota, and (3) the Trailer Interchange Agreement required Hoker to hold Lakeville harmless and indemnify Lakeville for Hoker's negligence.

The Court agrees that the Wisconsin Statute § 194.41(1) is not applicable to the instant case because Lakeville is registered under the UCR in Minnesota. The foregoing statute clearly states that it does not apply "to a motor carrier that is registered by another state under the [UCR]." Wis. Stat. § 194.41(1). It appears that it is also inapplicable to Wren, as Wren is not a motor carrier.

Mrs. Robbins, however, also argues that "Great West must comply with Wisconsin's Omnibus Statute, Wis. Stat. § 632.32, which requires that insurers provide the same liability coverage to permissive users as insurers provide to named insureds." Robbins' Br. at 24. In response, Great West argues that the statute is not applicable because the Policy was not issued or delivered in Wisconsin. Indeed, the statute reads in relevant part: "Except as otherwise provided, this section applies to every policy of insurance issued or delivered in this state . . . ." Wis. Stat. § 632.32(1). It is undisputed that Great West is a Nebraska insurer and Lakeville is a Minnesota corporation. Thus, the Policy was issued in Nebraska and delivered in Minnesota. Clearly, Wisconsin Statute § 632.32 does not apply. *See Sisson v. Hansen Storage Co.*, 756

N.W.2d 667, 675-76 (Wis. Ct. App. 2008) (applying plain language of statute); *Danielson v. Gasper*, 623 N.W.2d 182, 185-86 (Wis. Ct. App. 2000) ("Wisconsin Stat. § 632.32(1) does not require a Minnesota insurer issuing a policy in Minnesota to comply with statutes established for policies issued in Wisconsin.").

Based on the foregoing, the Court finds that Hoker and Phillips are not insureds under the Great West Policy, and Great West is not required to defend or indemnify Hoker or Phillips in relation to the underlying state court action. Thus, Great West and Wren are entitled to summary judgment.

## IV. CONCLUSION

For the reasons set forth above, Defendant Mrs. Robbins' motion (dkt. no. 148) is **DENIED**, Defendant Continental's motion (dkt. no. 147) is **DENIED**, Plaintiff Great West's motion (dkt. no. 152) is **GRANTED**, and Defendant Wren's motion (dkt. no. 158) is **GRANTED**.

The Court, however, is withholding final judgment in this matter until the claims against the defaulted Defendants are resolved.[9] Great West has not yet moved for default judgment against those parties.[10]

SO ORDERED: 11/21/14

_William T. Lawrence_
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.

---

[9] Clerk's entry of default was entered against Lakeville, Phillips, and Hoker on September 27, 2013 (dkt. nos. 67-69).

[10] Although the docket text indicates that Great West filed motions for default judgment (*see* dkt nos. 60, 62, 64), the motions requested only an entry of default (per the Court's entry at dkt. no. 58).